Hitchcock, J.
The facts of this case, as agreed by counsel, are, that on the 6th day of September, 1836, Freeby, the complainant, sold the land, covered by the mortgage, consisting of one hundred and ten acres, to the defendants, Thomas Tupper and Alanson Penfield. On the same day, Tupper and Penfield made three several promissory notes, payable to Freeby, for four hundred dollars each; one payable Sept. 1, 1837; another payable Sept. 1, 1838; one payable Sept. 1, 1839; and, also, one note for three hundred dollars, payable Sept. 1, 1840; and on the same day executed a mortgage upqn the same premises, to secure the payment of said notes.
In September, 1837, when the first note fell due, suit was brought upon it, by Freeby, in the Court of Common Pleas of Portage county, and a judgment recovered, at the February term of said Court, 1838, for $446.68. On this judgment execution was taken out, and, by procurement and direction of Freeby, was levied on forty-four acres of land, part and parcel of the aforesaid one hundred and ten acres. The land thus levied upon was sold at sheriff’s sale, on the third day of September, 1838, at and for the price or sum of five hundred dollars, this being a little more than two-thirds the appraised value. With the avails of this sale, the sheriff paid to Freeby the amount of his judgment, and interest, together with the costs. He also paid over, to Tupper and Penfield, the judgment debtors, the residue of the purchase money, amounting to fifteen dollars.
In September, 1838, Freeby brought suit upon the note which fell due on the first day of that month, and at the February term of the same Court of Common Pleas, 1839, recovered a judgment for $469.90. On this'judgment he took out execution, and caused the same to be levied on the remainder of the mortgaged premises, and the same were sold at sheriff’s sale on the 27th day of May, 1839, and purchased by said *469 Alanson Penfield, at the price of $759 — this sum being more than two-thirds the appraised value. This money was paid to the sheriff, with which he satisfied the last named judgment, and paid the surplus in his hands, amounting to $257.87, to Tupper and Penfield.
In September, 1839, suit was commenced by Freeby on the note falling due on the first day of that month. In this suit, judgment was recovered at the April term of the court, 1840. Alanson Penfield and Thomas Tupper have no real or personal estate subject to levy and sale, from which, on execution, this latter judgment can be satisfied, except 22i“ acres of the afore said premises, lying in common and undivided, in the sixty-six acres of said land which was sold upon the second judgment and execution.
On the 5th day of June, 1839, Alanson Penfield sold and conveyed all the aforesaid mortgaged premises to Horace Pen-field, one of the defendants, by a deed of warranty, except the twenty-two acres before mentioned.
On the 5th day of December, 1839, Horace Penfield, being indebted to the President, Directors and Company of the Commercial Bank of Lake Erie in the sum of $1,500, by a mortgage deed conveyed all of the aforesaid mortgaged premises to the said President, Directors and Company, in full satisfaction of said debt, at which time said President, Directors and Company had no knowledge, in fact, of the existence of any incumbrance on said land, but supposed the same to be free of any incumbrance whatever.
The aforesaid sales, by the sheriff, of said mortgaged premises, were regularly approved by the Court, and deeds executed by the sheriff to Alanson Penfield prior to the date of his deed to Horace Penfield, and the said mortgaged premises were appraised under the statute, without any reference to the mortgage incumbrance, to the complainant.
This agreed statement of facts shows, that the mortgagee, not electing to rely upon his mortgage, the condition of which was broken by the nonpayment of the first note when it fell *470 due, commenced suit upon that note,, recovered judgment, and caused a part of the mortgaged premises to be sold on execution. The money made by this sale , was applied in satisfaction of his judgment. When the second note fell due, the same course was pursued. And now, after having caused the. entire land to be sold on execution to satisfy the. two first notes, he seeks to subject it to sale in equity to satisfy the two last notes. The case is not different, in principle, from the case of Fos-dick v. Risk, decided at the present term. And it-seems .to the Court, that it would be manifestly inequitable and unjust to peimit'-the mortgagee so . to defeat the- title .-pf the purchaser at ■ sheriff’s sale. ■. ; ' ... 1 ’•
.- -It may be thought, -that inasmuch as-AIanson Penfield, one' ■pf the -mortgagors, became the purchaser at sheriff’s sale,-a dif-; ferpnt rule should .prevail than would have done had the pUr'.'chaser b.een a -stranger.'' But we. can see no difference' in' principle. By this, purchase,'Penfield acquired'a new title. Before,1 . he held the. land -in' common with -the defendant,- Tupper, subject to the incumbrance of the mortgage. ‘ By the purchase and sheriff’s deed, hé became the sole' owner "of-, the property, and that purchase having been' made at a.judicial sale, directed by the complainant himself, there can be no good reason why he should not hold it divested of the .lien of the mortgage.
From, the agreed facts, it would seem that although the lien of the mortgage was discharged by the sale on execution, that twenty-two acres of the land purchased by Penfield at that sale remained in him when the third judgment was rendered. If so, .that judgment would operate as a lien. But it is not the lien of a judgment we are called upon to enforce, but the lien of' a mortgage • and, in the opinion of the Court, there is not now any such subsisting lien.

Bill Dismissed at Complainant’s Costs.